The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Christopher **SALEH,** Defendant–Appellant.

No. 98CA2186.

Colorado Court of Appeals,
Div. V.

Oct. 26, 2000.

Rehearing Denied Dec. 28, 2000.

Certiorari Granted July 2, 2001.

Ken Salazar, Attorney General, Catherine P. Adkisson, First Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Litvak Litvak Mehrtens and Epstein, P.C., Barbara Jensen, Denver, CO, for Defendant–Appellant.

Opinion by Judge CRISWELL.*

Defendant, Christopher Saleh, appeals the judgment of conviction entered upon a jury verdict finding him guilty of second degree assault. We reverse the judgment and remand with directions to enter a judgment of conviction on the lesser-included offense of third degree assault and to resentence defendant on that conviction.

The evidence at trial established that, on the night in question, defendant and his fiancée (the victim) were arguing in their second-story residence. When the argument turned into a physical altercation, the victim announced that she was leaving. Defendant followed the victim to the head of the stairs and kicked her from behind. According to the prosecution's version of the evidence, defendant's foot struck the victim between the shoulder blades and propelled her down the stairs. The victim suffered a broken wrist and a fractured pelvis from the fall.

Defendant was charged with first degree assault in violation of § 18–3–202(1)(a), C.R.S.2000, which includes the elements of causing serious bodily injury by means of a deadly weapon with the intent to do so. The jurors were also instructed on two types of second degree assault as lesser-included offenses. They were not instructed on third degree assault.

Defendant was found guilty of second degree assault defined as "recklessly caus[ing] serious bodily injury to another person by means of a deadly weapon." Section 18–3–203(1)(d), C.R.S.2000. He was acquitted of all remaining charges.

## I.

■ Defendant first argues that the People failed to present sufficient evidence to prove that the victim's injuries occurred by means of the use of defendant's foot as a deadly weapon. We agree.

Colorado law recognizes three degrees of assault.

Third degree assault, a class one misdemeanor, is committed by knowingly or recklessly causing bodily injury or by causing bodily injury through criminal negligence by means of a deadly weapon. Section 18–3–204, C.R.S.2000.

Second degree assault, a class four felony, may be committed in a number of ways. Relevant to the issue presented here, second degree assault may be committed by inflicting "serious bodily injury" while intending to cause only "bodily injury." Section 18–3–203(1)(g), C.R.S.2000. Likewise, it may be committed if the intent is to cause only "bodily injury," but, "serious bodily injury" results "by means of a deadly weapon." Section 18–3–203(1)(b), C.R.S.2000. Finally, recklessly causing serious bodily injury "by means of a deadly weapon" also constitutes second degree assault. Section 18–3–203(1)(d), C.R.S. 2000.

First degree assault, a class three felony, is described in § 18–3–202, C.R.S.2000, and may be committed, *inter alia*, by intending to cause serious bodily injury and doing so "by means of a deadly weapon," § 18–3–202(1)(a), or by knowingly engaging in conduct that creates a grave risk of death and which conduct results in the infliction of serious bodily injury. Section 18–3–202(1)(c), C.R.S.2000.

As can be seen, therefore, the seriousness of the offense depends upon the intent of the actor, the degree of injury caused, and whether the injury was caused by means of a deadly weapon. Specifically, intentionally inflicting serious bodily injury without use of a deadly weapon constitutes assault in the second degree, and if the injury is inflicted by means of a deadly weapon, the offense becomes first degree assault. Similarly, recklessly causing bodily injury constitutes third degree assault, but the offense becomes second degree assault if the injury is inflicted intentionally *or* if serious bodily injury is

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S.2000.

inflicted recklessly *and* the injury is inflicted by means of a deadly weapon.

■ A challenge to the sufficiency of the evidence requires a reviewing court to determine whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crime charged beyond a reasonable doubt. The prosecution must be given the benefit of every reasonable inference that might fairly be drawn from the evidence. *People v. Inman*, 950 P.2d 640 (Colo.App.1997).

■ Initially, we reject the People's suggestion that defendant failed to preserve his claim because he did not raise the issue in the trial court. A sufficiency of the evidence claim may be raised for the first time on appeal. *See Morse v. People*, 168 Colo. 494, 452 P.2d 3 (1969).

■ Whether an article is a deadly weapon may present a factual issue because of the article's very character or because of the circumstances of its use. *People v. Lucero*, 985 P.2d 87 (Colo.App.1999).

The jury here was given the following instruction which accurately set forth the statutory definition of a deadly weapon contained in § 18–1–901(3)(e), C.R.S.2000:

> Deadly Weapon means any of the following, which in the manner it is used or intended to be used is capable of producing death or serious bodily injury: (I) a firearm, whether loaded or unloaded, (II) a knife, (III) a bludgeon, or (IV) any other weapon, device, instrument, material or substance, whether animate or inanimate.

This statute enumerates three specific types of deadly weapons, *i.e.*, firearms, knives, and bludgeons. All of these items are instruments that can be used in a manner consistent with their design to inflict serious bodily injury. *J.D.C. v. District Court*, 910 P.2d 684 (Colo.1996) (certain weapons by their very design and make are so lethal that, as a matter of law, they are deadly weapons). It can be presumed, therefore, that the General Assembly intend-

ed for the general definition in the final subsection of § 18–1–901(3)(e), any other weapon, device, instrument, material or substance, likewise to apply to things that are themselves the instruments that actually inflict serious bodily injury. *See People v. One 1988 Mazda 323*, 857 P.2d 569 (Colo.App. 1993) (when General Assembly's intent is unclear, general words which follow specific words in a statutory enumeration are to be construed to embrace only objects similar to those specifically enumerated).

Certainly, the prior decisions with respect to the nature of a deadly weapon have emphasized that such a weapon must be one that, because of its size, weight, and characteristics, and the circumstances under which it is used, is itself capable of producing serious bodily injury. *Grass v. People*, 172 Colo. 223, 227, 471 P.2d 602, 604 (1970) (approved instruction to jury that foot clad in shoe could be a deadly weapon depending upon "the nature of the instrument or thing, the manner of its use, the location on the body of the injuries inflicted and the extent of such injuries."); *Hutton v. People*, 156 Colo. 334, 338, 398 P.2d 973, 975 (1965) (a simulated pistol may be a deadly weapon "because of its substance, size and weight as a bludgeon wielded within striking distance of the person to be robbed.").

Under this general definition, some cases have held that a foot or a fist may be considered to be a deadly weapon. However, in those cases, the fist or the foot was the instrument that actually and directly caused the serious bodily injury. *See People v. Ross*, 831 P.2d 1310 (Colo.1992) (blows from fist caused eight major fractures around victim's eyes, nose, and mouth); *People v. Hayes*, 923 P.2d 221, 227 (Colo.App.1995) (although prosecution must prove "that the deadly weapon actually caused serious bodily injury," evidence was sufficient to prove that ring on finger of fist that struck victim caused tearing of victim's lip).

■ The statute under which defendant was convicted requires that the serious bodily injury be inflicted "by means of" a deadly weapon. In light of this requirement, the statutory definition of deadly weapon adopted by the General Assembly, and the

prior cases, we conclude that, even if a foot may be considered to be a deadly weapon under some circumstances, no violation of § 18–3–203(1)(d) occurs unless the foot is itself the instrument that actually and directly causes the serious bodily injury.

This interpretation avoids rendering part of the definition superfluous. If a deadly weapon includes body parts not actually used to inflict the serious injury, the issue whether the defendant caused serious bodily injury "by means of a deadly weapon" would be irrelevant in any second degree assault prosecution under § 18–3–203(1)(d), so long as it was proven that the victim sustained a "serious bodily injury" resulting from the defendant's actions. Under such an interpretation, *any* object, however used, which use set in motion a series of events resulting in serious bodily injury, would, by reason of such use, constitute the infliction of serious bodily injury "by means of a deadly weapon." As thus interpreted, it would be the ultimate *result* of the use, and not the *manner* of the use, that would determine whether the instrument was a deadly weapon. And, under such an analysis, *every* serious bodily injury would, of necessity, result from the use of a deadly weapon.

The construction we adopt here also advances the General Assembly's intent, consistently reflected throughout the criminal code, to punish more severely those crimes in which an object capable of inflicting serious bodily injury is actually used for such a purpose.

This legislative intent was recognized in *People v. Mozee*, 723 P.2d 117 (Colo.1986). There, the defendant argued, on equal protection grounds, that there was no difference between first degree assault in violation of § 18–3–202(1)(a) (intentionally causing serious bodily injury by means of a deadly weapon), and second degree assault in violation of a prior statute that prohibited intentionally causing serious bodily injury to another, if the latter offense was prosecuted as a crime of violence under § 16–01–309, C.R.S.2000 (use of, or possession and threatened use of, a deadly weapon). The supreme court disagreed and explained that, although the distinction was a "subtle" one, the two offenses were distinguishable because the phrase "by means of a deadly weapon," when used as an element of first degree assault, required the People to prove that the instrument "actually" and "directly" caused serious bodily injury to the victim.

Here, the jury found that defendant did not intend to cause any serious bodily injury to the victim when he kicked her. In addition, there is no evidence that the victim sustained any injury, either serious or otherwise, where defendant's foot made contact with her body. On the contrary, the victim testified that all of her injuries were sustained in her fall down the stairs.

Given this state of the record, therefore, we conclude that the evidence cannot support a finding that defendant's foot was the actual and direct cause of the victim's injuries. Consequently, this evidence was insufficient, as a matter of law, to sustain defendant's conviction of second degree assault under § 18–3–203(1)(d).

▆ Although this conclusion precludes retrial on that charge, *see People v. Miralda*, 981 P.2d 676 (Colo.App.1999), there is sufficient evidence to support a finding of defendant's guilt of the lesser-included offense of third degree assault, and the jury's conviction of the greater offense necessarily establishes that the elements of the lesser offense were demonstrated beyond a reasonable doubt. *See* § 18–3–203, C.R.S.2000 (a person commits the crime of assault in the third degree if he or she recklessly causes bodily injury to another person). Thus, judgment may be entered on that lesser offense here. *See People v. Patterson*, 187 Colo. 431, 532 P.2d 342 (1975) (if appellate court reverses conviction as to greater offense for insufficient evidence, it may direct entry of judgment on lesser-included offense supported by sufficient proof, even if jury was not instructed upon that lesser offense).

## II.

▆ Defendant next contends that the trial court failed to read the introductory and admonitory jury instructions set forth in *COLJI–Crim.* No. 1:03, 1:04, and 1:05 (1983). Because this claim challenges the fairness of

the trial, we must address it to determine whether judgment may be entered on the lesser-included offense. We conclude the record before us shows no prejudicial defect.

The first instruction which defendant alleges was not given is the pattern introductory instruction of *COLJI–Crim.* No. 1:03. The Notes on Use accompanying that instruction indicate that it is to be given immediately after the court administers the oath to the jurors selected to hear the case.

Here, the record indicates that the jurors' oath was administered at the conclusion of *voir dire.* However, defendant has not provided us with a transcript of that portion of the proceedings. Thus, we must presume the pattern introductory instruction was given at the appropriate time. *See People v. Bishop,* 7 P.3d 184 (Colo.App.1999) (it is duty of defendant appealing judgment of conviction to provide those portions of the record necessary to substantiate his or her claims on appeal; absent such a record, appellate courts must presume correctness of trial court's actions). Moreover, we note that the central concepts contained in the pattern introductory instruction were also described in the jury instructions given at the conclusion of the evidence.

This same analysis is applicable to defendant's allegation concerning the pattern instruction set forth in *COLJI–Crim.* No. 1:05.

Finally, defendant claims the trial court failed to give the admonitory instruction set forth in *COLJI–Crim.* No. 1:04 concerning jury conduct during trial recesses. Here again, we must presume this instruction was given prior to the first recess at the conclusion of *voir dire.* Furthermore, defendant does not allege that the jurors deliberated prematurely or were exposed to extraneous information.

Accordingly, we reject defendant's claims of instructional error and conclude that judgment may be entered on the lesser-included offense. In light of that determination, we need not address defendant's remaining arguments.

The judgment of conviction is reversed, and the cause is remanded to the trial court with directions to enter judgment for third degree assault and to resentence defendant on that conviction.

VOGT, J., concurs.

RULAND, J., dissents.

Judge RULAND dissenting.

Because I view the evidence as more than sufficient to sustain defendant's conviction for second degree assault, I respectfully dissent.

As noted by the majority, the definition of a "deadly weapon" contained in § 18–1–901(3)(e), C.R.S.2000, includes any "weapon, device, instrument . . . whether animate or inanimate," if it is used in a manner capable of producing serious bodily injury. As a result, in *People v. Ross,* 831 P.2d 1310 (Colo. 1992), our supreme court held that fists may be deadly weapons under the statute depending upon the manner in which they are used.

Relying upon *Ross,* in *People v. Hayes,* 923 P.2d 221 (Colo.App.1995), a division of this court held that feet were in effect a deadly weapon when used to kick a victim on the ground in a manner capable of producing serious bodily injury.

Here, however, the majority holds that defendant's foot must be the instrumentality that inflicted the serious bodily injury, that is, the injury must occur at or near the location on the victim's body where the foot struck her. I find no such limitation in the analysis in either *Ross* or *Hayes.*

In each opinion, the court refers to the fist or foot as causing the serious bodily injury. However, "cause" means to bring about or effect. *Black's Law Dictionary* 212 (7th ed.1999). As a result, in my view if the fist or foot strikes the victim with sufficient force to put in motion a sequence of events causing a serious bodily injury, then the evidence is sufficient to sustain the conviction.

Otherwise, an assailant who strikes a victim with a fist with sufficient force to cause serious internal injuries may be guilty of first or second degree assault while an assailant who kicks a victim into the path of an oncoming car is not. Or, an assailant who uses his hands to choke a victim into unconsciousness

causing serious injury would be guilty of first or second degree assault while an assailant who uses his hands to push the victim off a building would not.

In addition, I find no justification for the majority's interpretation and application of the assault statutes. *See* § 18–0–202(1)(a) and § 18–3–203(1)(d), C.R.S.2000. Indeed, in *People v. Hayes, supra,* in discussing the evidence supporting a finding of serious bodily injury, the division noted the fact that one victim fell to the pavement as a result of being knocked unconscious. A most plausible inference there was that the injury could have resulted from striking the pavement.

Nor do I view *People v. Mozee,* 723 P.2d 117 (Colo.1986), as support for the majority's conclusion. In that case the victim was shot with a pistol, and thus, it was unnecessary to address specifically the necessary causal connection between the deadly weapon and the injury. In distinguishing between first degree assault/crime of violence and second degree assault/crime of violence for equal protection purposes, our supreme court analyzed how an injury caused by the pistol would be first degree assault/crime of violence while an injury caused by the assailant's fist while holding a pistol would be second degree assault/crime of violence. However, as I read *Mozee,* if the shot fired in that case had not struck the victim but had caused him to dive off a wall thus sustaining serious bodily injury, the court would have reached the same conclusion. This is because the deadly weapon would have been used in a manner calculated to cause serious bodily injury.

Here, defendant obviously knew that the victim was standing at the top of a stairway and that a kick between the shoulder blades would propel the victim downward in a fall calculated to cause serious bodily injury. That injury occurred. Thus, I would affirm the judgment.